IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 OCT 28 PM 12:06

CLERK C. Adams
SO. DIST. OF GA.

| | |
|---|---|
| RONNIE JACOBS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CV 111-025 |
| | ) (Formerly CR 109-013) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Ronnie Jacobs, an inmate currently incarcerated at the Federal Correctional Institution in Elkton, Ohio, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is now before the Court on Respondent's motion to dismiss Petitioner's 28 U.S.C. § 2255 motion. (Doc. no. 4.) Petitioner has filed a response opposing Respondent's motion. (Doc. no. 8.) For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED** (doc. no. 4), that the instant § 2255 motion be **DISMISSED**, and that this civil action be **CLOSED**.

I.  **BACKGROUND**

In an indictment filed on February 4, 2009, Petitioner was charged with three counts of distributing quantities of cocaine hydrochloride and cocaine base, in violation of 21 U.S.C.

§ 841(a)(1).[1] United States v. Jacobs, CR 109-013, doc. no. 1 (S.D. Ga. Feb. 4, 2009) (hereinafter "CR 109-013"). Pursuant to a written plea agreement with the government, Petitioner pleaded guilty to the lesser included offense of Count Three of the indictment: that on or about October 31, 2008, Petitioner knowingly and intentionally distributed a quantity of cocaine base. Id., doc. no. 26. Petitioner's plea agreement contained a broad appeal and collateral attack waiver provision that stated in relevant part:

> ... [T]he defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of the sentence.

Id. at 5. By signing the plea agreement, Petitioner also agreed to waive all rights under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, if necessary, to delay sentencing until Petitioner had substantially complied with his agreement to cooperate with Respondent. Id. at 4.

At Petitioner's change of plea (Rule 11) hearing held on September 9, 2009, the Honorable J. Randal Hall, United States District Judge, summarized the terms of the plea agreement and explained to Petitioner:

> ... [Y]ou have agreed to waive your right to appeal your conviction and sentence. Normally, you would have the right in any criminal matter to

---

[1] Specifically, Count One of the indictment charged Petitioner with distributing 159.9 grams of cocaine hydrochloride on or about October 8, 2008; Count Two charged him with distributing 66.7 grams of cocaine base on or about October 22, 2008; and Count Three charged him with distributing 23.9 grams of cocaine base on or about October 31, 2008. CR 109-013, doc. no. 1.

2

> directly appeal a conviction or sentence and to collaterally attack that sentence in a post-conviction proceeding, such as a Habeas corpus proceeding. However, in this case, your plea agreement provides that you are waiving that right subject to the following conditions.
> Those conditions are:
> One, if this Court should sentence you to a sentence that is either greater than what the law allows or higher than the upper end of the guideline range, you would have the right to directly appeal that sentence to the Eleventh Circuit.
> In addition, if the government were to, for some reason, appeal your sentence, you would also have that right restored.
> Do you understand that waiver or provision, Mr. Jacobs?
> A:   Yes, sir.
> Q:   And knowing that, do you still wish to sign the agreement containing the waiver of appeal provision?
> A:   Yes, sir.

Id., doc. no. 37, pp. 16-17. Judge Hall also informed Petitioner in detail that he would be waiving a number of other rights by pleading guilty. Id. at 8-9. When Judge Hall asked Petitioner whether anyone had required or forced him to plead guilty, Petitioner responded, "No, sir." Id. at 5. Judge Hall also asked Petitioner whether he was satisfied with the representation of his retained counsel, Jacque D. Hawk, to which Petitioner replied, "Yes, sir." Id. at 12.

Judge Hall went over the indictment at the plea hearing and confirmed that Petitioner was pleading guilty only to the lesser included offense of Count Three. Id. at 12-13. Judge Hall explained that the maximum penalty for the lesser included offense of Count Three was a term of "not more than twenty years of imprisonment, a fine of not more than $1 million or both, at least three years of supervised release, and a $100 special assessment." Id. at 13. Additionally, Judge Hall explained the role of the United States Sentencing Guidelines, emphasizing that they were only advisory and not binding on the District Court. Id. at 15.

3

Furthermore, in response to a question asked by Judge Hall, Petitioner averred that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence. Id. Following testimony as to the factual basis for the plea by Drug Enforcement Administration Task Force Investigator Meekail Shaheed, the truth of which Petitioner confirmed, Judge Hall accepted Petitioner's guilty plea. Id. at 20-26.

After the Rule 11 hearing, the United States Probation Office prepared a presentence investigation report ("PSI"). The PSI provided a base offense level of 30, a two-level enhancement based on Petitioner's possession of firearms,[2] and a three-level reduction for acceptance of responsibility, yielding a total offense level of 29. PSI ¶¶ 18, 19, 23, 26. The PSI assigned Petitioner a criminal history category of III. PSI ¶ 36. Based on Petitioner's total offense level and criminal history category, the Guideline range for imprisonment was 108 to 135 months. PSI ¶ 53. Petitioner filed objections to the drug quantity calculation and the firearm enhancement in the PSI. PSI, Addendum.

On March 5, 2010, Judge Hall conducted a sentencing hearing. CR 109-113, doc. no. 38. There, Mr. Hawk presented arguments in support of both of Petitioner's objections to the PSI.[3] Id. at 5-27. With regard to the firearm enhancement, Mr. Hawk called Petitioner's mother to testify as to Petitioner's lack of knowledge of the firearms in the

---

[2] A search of Petitioner's residence at the time of his arrest produced three firearms, two cellular telephones, a digital scale, eleven plastic baggies, and a crack pipe with cocaine residue. PSI ¶ 9. The firearms were found inside a wall within the kitchen of the residence; the PSI concluded that the firearms' presence in the residence demonstrated Petitioner's constructive possession of the firearms. PSI ¶ 10.

[3] Judge Hall sustained Petitioner's objection to the drug quantity calculation. CR 109-13, doc. no. 38, pp. 10-11. As this objection is not at issue in the instant petition, the Court does not address it further.

4

residence. Id. at 12. She testified that she owned the residence, that she had lived there for about thirty years, and that Petitioner frequently stayed in a bedroom in the home. Id. at 13. She further testified that she stored all three of her firearms in a bag that she had placed in a hallway closet off her living room and that she had not ever used the guns despite owning them since the mid 1990s.[4] Id. at 13-14. She stated that she had placed numerous objects in front of the bag containing the guns to prevent her young grandson from finding them. Id. at 14. Furthermore, she testified that she never told Petitioner about the guns, that he was unaware that there were guns in the closet, and that she did not keep the guns in her kitchen. Id. at 15, 17, 21.

The government next called Investigator Shaheed, who participated in the search of Petitioner's residence at the time of his arrest, to testify. Id. at 24. Investigator Shaheed testified that all three firearms were found "in a little cutout in a closet in the kitchen area," and that there were no guns found off the living room. Id. at 24-25.

Noting a discrepancy between the testimony of Petitioner's mother and Investigator Shaheed with regard to the location of the firearms in the residence, the Court overruled Petitioner's objection to the firearm enhancement. Id. at 30. Judge Hall sentenced Petitioner to a 130-month term of imprisonment, on the higher end of the Guideline range.[5]

---

[4] Petitioner's mother testified to owning the three guns that were found in the search of the residence. Id. at 16, 20. She testified that she had purchased one of the guns while Petitioner was in prison for another crime, id. at 15, and that she had received the other two from her nephew. Id. at 14, 16.

[5] Because Petitioner committed the offense in question while on supervised release for a separate drug-related offense, the Court revoked his supervised release and committed him to a separate 60-month term of imprisonment to run consecutive to the 130-month sentence. CR 109-013, doc. no. 38, pp. 43-44.

5

Id. at 33-34. At sentencing, Judge Hall again reminded Petitioner that he had "waived the right to attack this sentence in any post-conviction proceeding." Id. at 38. Consistent with his plea agreement, Petitioner did not appeal.

On February 22, 2011, Petitioner filed the instant § 2255 motion, in which he raises the following four grounds for relief: (1) that his trial counsel provided ineffective assistance by failing to call witnesses that would have established Petitioner's innocence with regard to the firearm enhancement;[6] (2) that his trial counsel provided ineffective assistance by coercing Petitioner "to plead guilty to an enhancement that he is clearly and actually innocent of"; (3) that the District Court erred in applying the firearm enhancement at sentencing; and (4) that he was denied his right to a speedy trial under the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (Doc. no. 1, pp. 4, 5, 7, 15-19.) Respondent contends that Petitioner's § 2255 motion should be dismissed with respect to his first, second, and fourth claims because they are barred by the collateral attack waiver set forth in Petitioner's plea agreement; in any event, Respondent argues, these claims are meritless. (See doc. no. 4.) With respect to Petitioner's third claim, Respondent contends that sentencing guideline errors are not cognizable on collateral attack. (Id. at 14.) Respondent further contends that since Petitioner failed to raise his third claim on appeal that it is now procedurally defaulted. (Id.) Upon prompting by the Court (doc. no. 5), Petitioner filed a response opposing the motion to dismiss. (Doc. no. 8.)

---

[6]Petitioner states that Mr. Hawk promised him that Petitioner's aunt, uncle, and probation officer would testify at sentencing and that testimony regarding fingerprint analyses would also be presented. (Doc. no. 1, pp. 16-17.) Although he argues that this testimony would have established his innocence with regard to the firearm enhancement, he does not further elaborate as to the details of this allegedly exculpatory information. (Doc. no. 1, pp. 15-17.)

6

The Court resolves the matter as follows.

## II. DISCUSSION

### A. Knowing and Voluntary Nature of Guilty Plea

Before determining whether the waiver provision in Petitioner's plea agreement is valid, the Court must examine whether Petitioner's guilty plea was knowing and voluntary.

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 574 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:
>
>> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense

unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Here, Petitioner has not argued that his guilty plea was not knowing or voluntary. Moreover, the extensive plea colloquy conducted by Judge Hall addresses each of the aforementioned "core principles." Id. at 1019. Judge Hall questioned Petitioner whether anyone had required or forced him to plead guilty, and Petitioner responded, "No, sir." CR 109-013, doc. no. 37, p. 5. Judge Hall informed Petitioner in clear terms of the lesser included offense of Count Three and the maximum statutory penalty that might be imposed on Petitioner in the event of his conviction, and Petitioner testified that he understood the charge and the maximum penalty that might be imposed. Id. at 12-13. Judge Hall also provided a detailed explanation of the rights that Petitioner would forfeit by pleading guilty; Petitioner stated that he understood these rights and that his decision to plead guilty would result in a waiver of these rights. Id. at 8-9. In addition, Petitioner testified that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence.

8

Id. at 15.

In short, Judge Hall's thorough plea colloquy ensured that Petitioner's guilty plea was free from coercion and that Petitioner understood both the nature of the charge to which he was pleading guilty and the consequences of his plea. See Moriarty, 429 F.3d at 1019. Furthermore, Petitioner has not alleged, much less shown a reasonable probability, that he would not have pleaded guilty if he had known about the possibility of an enhancement in his offense level based on the possession of a firearm. See id. at 1020 (rejecting challenge to entry of guilty plea where defendant did not attempt to carry his burden of showing that, but for the alleged error, he would not have entered his guilty plea). Accordingly, the Court finds that Petitioner's guilty plea was entered knowingly and voluntarily.

### B. Petitioner's Claims of Ineffective Assistance of Counsel Are Barred by the Collateral Attack Waiver in His Plea Agreement

Having determined that Petitioner's guilty plea was both knowing and voluntary, the Court turns to the collateral attack provision in Petitioner's plea agreement.

Petitioner argues first that Mr. Hawk was ineffective for failing to call witnesses during his sentencing hearing because that would have established that Petitioner was innocent with regard to the firearm enhancement, although he does not explain why this is so. (Doc. no. 1, pp. 15-17.) Second, wrapped up in his argument that Judge Hall erred in applying the firearm enhancement – discussed below – Petitioner argues that Mr. Hawk coerced him "to plead guilty to an enhancement that he is clearly and actually innocent of." (Id. at 17.)

It is well-settled that a waiver of the right to collaterally attack a sentence is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320,

1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993).[7]

"To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden in the instant case, then Petitioner's first and second claims are barred from review.[8] See United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999) (enforcing waiver provision where defendant was specifically questioned about waiver); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997) (same).

Here, Respondent has met its burden in demonstrating the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to collaterally attack his sentence "in any post-conviction proceeding, including a § 2255 proceeding." CR 109-013, doc. no. 26, p. 5. Moreover, Judge Hall thoroughly reviewed the terms of the plea agreement during the plea colloquy, with particular emphasis on the significance of the appeal and collateral attack waiver provision. Id., doc. no. 37, pp. 16-17. After Judge Hall concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Hall. Id. at 17.

The record before the Court therefore demonstrates that the collateral attack waiver

---

[7]Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See Bushert, 997 F.2d at 1345; see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

[8]As discussed in further detail below, Petitioner's third claim is likewise barred by the collateral attack waiver.

was knowing and voluntary. Petitioner does not contend in his motion that his guilty plea or the collateral attack waiver were entered into unknowingly or involuntarily – nor could he. Moreover, Petitioner's "[s]olemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Thus, the Court concludes that the collateral attack waiver is valid.[9]

"An ineffective assistance of counsel argument survives a waiver of appeal [or collateral attack] only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 336, 343 (5th Cir. 2002)). Applying this principle, the Eleventh Circuit concluded in Williams that the petitioner's ineffective assistance of counsel claims concerning his counsel's representation at sentencing were not exempted from the collateral attack waiver in the plea agreement, as the claims "[did] not concern representation relating to the validity of the plea or waiver." See id.

The same reasoning applies here. Petitioner's claims that his counsel was ineffective for failing to call witnesses during sentencing to establish his innocence with regard to the firearm enhancement or for "coercing" Petitioner to plead guilty to the sentencing enhancement[10] do not call into question the validity of Petitioner's plea or the waiver

---

[9]The appeal waiver provision of Petitioner's plea agreement is likewise valid. See infra note 11.

[10]Moreover, as Respondent correctly points out (doc. no. 4, p. 11), Petitioner's counsel could *not* have forced Petitioner "to plead guilty to an enhancement," as one does not "plead guilty" to a sentencing enhancement under the United States Sentencing Guidelines. In fact, Petitioner's counsel *objected* to the application of the enhancement in the PSI and at sentencing.

11

provision. Both of these claims are therefore barred from review by the collateral attack waiver. See id.

### C. Petitioner's Claim that District Court Erred in Applying Firearm Enhancement is Barred by the Collateral Attack Waiver

Petitioner also claims that Judge Hall erred in applying a two-level enhancement under the United States Sentencing Guidelines for possession of a firearm because he "did not even have the knowledge of the weapons found in the home." (Doc. no. 1, pp. 5, 18.) Respondent counters that sentencing errors are not cognizable on collateral attack. (Doc. no. 4, p. 14.) Furthermore, Respondent argues that because Petitioner did not raise this claim on direct appeal – as he did not file an appeal in accordance with his plea agreement – that this claim is therefore procedurally defaulted. (Id.) However, because the Court finds that Petitioner's third claim is also barred by his collateral attack waiver, it does not reach Respondent's other arguments.[11]

Claims that a sentencing court erroneously enhanced a petitioner's sentence fall

---

PSI, Addendum; CR 109-013, doc. no. 38, pp.11-28.

[11] Attempting to counter Respondent's argument that this claim is procedurally defaulted, Petitioner argues that after his sentencing hearing, he did not hear from Mr. Hawk, who did not file an appeal. (Doc. no. 8, p. 2.) While an attorney generally has a duty to consult with a defendant about an appeal, Thompson v. United States, 504 F.3d. 1203, 1206 (11th Cir. 2007), to the extent Petitioner attempts to recast his claim in his reply, he may not do so. See Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005); see also United States v. Falcon-Sanchez, 416 F. App'x 728, 730 (10th Cir. 2011) (holding that ineffective assistance claim based on counsel's failure to file notice of appeal as instructed by petitioner was barred by collateral attack waiver because the claim "[did] not relate to the validity of the plea or the waiver"). Moreover, as Respondent points out (doc. no. 4, p. 15), Petitioner does not contend that he requested that Mr. Hawk file an appeal, which simply underscores that Petitioner failed to appeal his sentence. At any rate, as stated above, because the Court finds that Petitioner's third claim is barred by his collateral attack waiver, the Court need not examine the procedural default argument.

within the scope of a valid waiver provision, unless the waiver expressly provides otherwise. See United States v. Frye, 402 F.3d 1123, 1129 (11th Cir. 2005) (*per curiam*) (affirming dismissal of habeas petitioner's claim that district court erroneously enhanced his sentence where petitioner had knowingly and voluntarily waived his right to appeal or collaterally attack his sentence in his plea agreement). As explained above, the waiver provision in Petitioner's plea agreement is valid. Furthermore, although there are exceptions included in the waiver provision, the waiver makes no allowance for challenging the application of the firearm enhancement in either a direct appeal or collateral attack.

In his reply, Petitioner contends that he is attacking his sentence in accordance with the terms of the waiver because, he argues, if the firearm enhancement were removed from his sentence, this would decrease his offense level by two, thus causing "his [s]entence to fall outside of his Guidelines." (Doc. no. 8, p. 3.) Petitioner's analysis misses a step. The waiver indeed provides that "the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court." CR 109-013, doc. no. 26, p. 5. But before he may argue that his sentence is in excess of the Guideline range,[12] Petitioner must first show that the firearm enhancement was error. As explained above, however, Petitioner is unable to meet this challenge: the waiver provision in Petitioner's plea agreement is valid, and contained no provision permitting Petitioner to challenge Judge Hall's application of the firearm sentencing enhancement. Thus, like his claims for ineffective assistance of counsel,

---

[12]According to the PSI, the Guideline range for Petitioner's offense and the firearm enhancement yielded a Guideline range of 108-135 months. PSI ¶ 53. Judge Hall did not vary or depart from that range when he sentenced Petitioner to 130 months.

13

his claim that Judge Hall erred in applying the firearm enhancement is barred from review.

### D. Petitioner's Claim of Violation of Speedy Trial Act is Foreclosed by His Guilty Plea

Finally, Petitioner claims that his right to a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and the Sixth Amendment was violated during his criminal proceedings. (Doc. no. 1, pp. 18-19; doc. no. 8, p. 3.) Respondent argues that this claim is also barred by Petitioner's collateral attack waiver. (Doc. no. 4, p. 15.) Alternatively, Respondent argues that because Petitioner's guilty plea was knowing and voluntary, it forecloses his right to assert a speedy trial violation. (Id. at 15-16.)

The Eleventh Circuit has not addressed whether an appeal or collateral attack waiver bars a petitioner's claim that his right to a speedy trial was violated. Nevertheless, as explained below, even if this claim is not barred by his collateral attack waiver, it is barred by Petitioner's guilty plea.

"A defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all *nonjurisdictional* defects in that defendant's court proceedings." United States v. Yunis, 723 F.2d 795, 796 (11th Cir. 1984) (emphasis in original). Once a defendant enters a knowing, voluntary guilty plea, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). Furthermore, "[t]he right to a speedy trial has repeatedly been held to be nonjurisdictional, both before and after the passage of the Speedy Trial Act." Yunis, 723 F.2d at 796; compare Fowler v. United States, 391 F.2d 276, 277 (11th Cir. 1968) (*per curiam*) (Sixth

14

Amendment, pre-Speedy Trial Act case) ("Appellant's plea of guilty forecloses his allegation that he was denied a speedy trial. His voluntary plea constituted a waiver of all non-jurisdictional defects."), with United States v. Jackson, 659 F.2d 73, 73 (11th Cir. 1981) (*per curiam*) (holding that the right to speedy trial is non-jurisdictional in nature, and is therefore waived through knowing and voluntary guilty plea), and Stewart v. United States, Nos. 1:07-CV-3045-TWT, 1:08-CV-1005-TWT, 2009 WL 909547, at *8 (N.D. Ga. Apr. 2, 2009) (same).

As explained above, Petitioner's guilty plea was knowing and voluntary. Petitioner thereby waived his right to assert a violation of his right to a speedy trial under either the Sixth Amendment or the Speedy Trial Act. Accordingly, he is not entitled to relief on this claim.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** (doc. no. 4), that the instant § 2255 motion be **DISMISSED**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED on this 28th day of October, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

15